| UNITED STATES DISTRICT COURT | ELECTRONIC PUBLICATION ONLY |
| EASTERN DISTRICT OF NEW YORK | |

| JEREMY SPARIG, | |
| --- | --- |
| Plaintiff, | MEMORANDUM AND ORDER |
| - versus - | 11-CV-5206 (JG) (CLP) |
| KERRY DANENBERG, SARAH RUSSEL, SELECT REAL ESTATE, DANBRO STUDIOS, DUSTY LLC, | |
| Defendants. | |

A P P E A R A N C E S :

    JEREMY SPARIG
        133 Montrose Avenue
        Apartment #3
        Brooklyn, New York 11206

        Plaintiff, *Pro Se*

    CARLINSKY, DUNN & PASQUARIELLO, PLLC
        334 Leonard Street
        Brooklyn, New York 11211
    By:    Antonio Pasquariello

        Attorneys for the Defendants

JOHN GLEESON, United States District Judge:

        Plaintiff Jeremy Sparig commenced this *pro se* action on October 24, 2011, alleging a variety of claims arising from his former relationship with Select Real Estate, LLC ("SRE"), a real estate brokerage based in Brooklyn, New York. Sparig has asserted federal claims against SRE, its principals and related companies for copyright infringement, as well as violations of § 1 of the Sherman Act, 15 U.S.C. § 1, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* He has also asserted various claims under state law. For the reasons set forth below, the Defendants' motion to dismiss is granted in part and denied in part.

BACKGROUND

A.  *Factual Background*

Sparig began working as a real estate salesperson for SRE, a real estate brokerage, in April 2008. Am. Compl. ¶¶ 27, 29, ECF No. 3.[1] He worked for SRE as an independent contractor, paid by commission. *Id.* ¶¶ 29, 31. When he accepted a position with SRE, Sparig signed a non-compete agreement. *See id.* ¶ 32. This agreement broadly prohibits Sparig from being involved with another real estate brokerage within five miles of SRE's office for a period of three years. *See id.*

When Sparig interviewed for the position with SRE, Danenberg told him that he would be provided with "expert training by a senior expert Broker." *Id.* ¶ 39(i). He would work with this senior broker on his first four transactions and they would split both the work and the commissions. *Id.* ¶ 39(v). He was told commissions would be paid one week after a lease was signed. *Id.* ¶ 39(iii). Danenberg also told Sparig about DANBRO studios, a property owned by Danenberg and his brother. *Id.* ¶ 39(vi). Danenberg told Sparig he would receive a commission of one month's rent for each unit he was able to lease at DANBRO studios. *Id.* ¶ 39(vii). Based on these and other statements by Danenberg, Sparig agreed to work for SRE and to sign the non-compete agreement. *Id.* ¶ 40.

Despite the promise of being paired with a senior broker, when Sparig began working at SRE he was actually paired with the next-most-junior broker. *Id.* ¶ 41. Sparig completed his first transactions alone, without training or assistance from that junior broker or others, but still had half of his commissions taken away. *See id.* ¶¶ 42–43. In addition, Sparig

---

[1] The facts are drawn from the Amended Complaint and are assumed to be true for purposes of this motion.

alleges that for each month he worked at SRE, his commissions were not paid on time and he did not receive the full amount of commissions he had earned. *See, e.g.*, ¶¶ 47, 59, 72.

In October 2008, Sparig terminated his relationship with SRE. *Id.* ¶ 84. He told Danenberg that he intended to go into the real estate business with his father. *See id.* In response, Danenberg threatened to enforce the non-compete agreement and commence litigation against Sparig that he would seek to make as lengthy and expensive as possible, causing financial ruin to Sparig and his father. *See id.* ¶ 85. SRE subsequently sent cease and desist notices to Sparig, demanding that he refrain from violating the non-compete agreement. *See, e.g., id.* ¶ 137.

Danenberg also told Sparig that any judgment against SRE would be unenforceable because SRE has no assets and all its money is funneled into various other companies. *Id.* ¶¶ 85, 138. Danenberg refused to allow Sparig to take some of his personal belongings as well as records he was required to maintain under New York law regulating real estate salespersons. *See id.* ¶¶ 89, 134, 160. After Sparig resigned, Danenberg instructed SRE employees to call Sparig's former clients and inform them that Sparig had been fired and that they should not work with him. *See id.* ¶¶ 88, 122. In addition, SRE failed to provide Sparig with forms documenting his experience as a salesperson there, which he needed in order to become a licensed real estate broker. *See id.* ¶¶ 102, 154, 159.

Danenberg's conduct prevented Sparig from entering into a real estate business on his own or with his father. *See id.* ¶¶ 84–85, 123–24, 151. In particular, Sparig was unable to work with the landlord of 476 Jefferson Street, with whom he had obtained an exclusive listing agreement during his time at SRE. *See id.* ¶¶ 54, 76. Although the landlord had been willing to continue to work with Sparig after he left SRE, Danenberg's conduct prevented him from doing

3

so. *See id.* ¶¶ 76, 122, 150. Sparig also had to turn down another offer to be an exclusive listing agent for a commercial property. *Id.* ¶ 155. And the failure to provide Sparig with documentation of his work "made it impossible for [him] to expand his business and hire other agents." *Id.* ¶ 154.

Prior to working at SRE, Sparig had worked as a professional photographer. *Id.* ¶ 28. Although he had asked SRE to hire him as a photographer, SRE declined to do so. *See id.* ¶ 30. Sparig nevertheless employed his photography skills and equipment in his real estate work at SRE. *See id.* ¶ 90. After he left SRE, SRE continued to use Sparig's photographs to market properties on its website. *See id.* ¶¶ 90, 93, 96, 98. Sparig's attorney sent a letter to SRE demanding that it cease and desist from using Sparig's photographs. *See id.* ¶ 101. SRE refused and continued to use the photographs. *See id.* ¶¶ 102–03.

B.  *Procedural Background*

Sparig commenced this action on October 24, 2011, and filed an amended complaint on November 9, 2011. He named as Defendants both SRE and Danenberg, as well as Sarah Russell,[2] Danenberg's wife and a broker at SRE. He also named DANBRO Studios, Dusty Group, LLC, Piggyback, Inc., 31 Bushwick Corp. and other unidentified companies, all of which are allegedly owned by Danenberg.[3]

On March 23, 2012, the Defendants filed an answer and counterclaims, including a counterclaim for breach of the non-compete agreement. The Defendants also moved to dismiss

---

[2]  Russell's name is misspelled as Russel in the amended complaint.
[3]  Some of these companies are not listed in the case caption, but are listed in the body of the amended complaint.

the amended complaint. In addition, their motion seeks the imposition of sanctions against Sparig pursuant to Rule 11 of the Federal Rules of Civil Procedure.[4]

## DISCUSSION

A.   *Standard of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)) (internal quotation marks omitted). A court considering a motion to dismiss should assume the veracity of the well-pleaded factual allegations in the complaint "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

B.   *Federal Claims*

1.   *The Antitrust Claim*

Section 1 of the Sherman Act prohibits any "combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. Despite its broad language, courts have recognized that § 1 does not prohibit every agreement that restrains trade. *See Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 687–88 (1978); *Ark. Carpenters Health & Welfare Fund v. Bayer AG*, 604 F.3d 98, 104 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 1606 (2011). Instead, most agreements are subject to "rule of reason" analysis, while only a limited class of agreements is deemed per se unlawful. *See Ark. Carpenters Health & Welfare Fund*, 604 F.3d at 104.

---

[4]   In a March 26, 2012 Order, I stated that the motion for sanctions would not be heard unless and until the Defendants' motion to dismiss is granted.

Restrictive covenants not to compete, such as the one at issue here, are not per se violations of the Sherman Act. *Bradford v. N.Y. Times Co.*, 501 F.2d 51, 59–60 (2d Cir. 1974); *see also Capital Temporaries, Inc. of Hartford v. Olsten Corp.*, 506 F.2d 658, 666 (2d Cir. 1974). Thus, they are analyzed under the rule of reason. *Eichorn v. AT&T Corp.*, 248 F.3d 131, 144 (3d Cir. 2001); *Bradford*, 501 F.2d at 60.

Under the rule of reason, an antitrust plaintiff must allege "an adverse effect on competition, not merely injury to itself." *See Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 713 F. Supp. 2d 286, 299 (S.D.N.Y. 2010) (citing *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 96 (2d Cir. 1998)). Sparig has failed to allege facts supporting a plausible claim of an adverse effect on competition in general. He has not alleged that use of the covenant not to compete has given SRE undue market power in any relevant market. While it may have inhibited Sparig's personal ability to compete with SRE, that is not the type of injury the antitrust laws are designed to address. *See Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993) ("Insisting on proof of harm to the whole market fulfills the broad purpose of the antitrust law that was enacted to ensure competition in general, not narrowly focused to protect individual competitors."). Accordingly, the antitrust claim is dismissed.

2. *The RICO Claim*

RICO prohibits, *inter alia*, conducting (or participating in the conduct of) the affairs of an enterprise affecting interstate or foreign commerce through "a pattern of racketeering activity." 18 U.S.C. § 1962(a)–(c); *see also GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995) ("Under any prong of § 1962, a plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity.'"). "RICO provides a private right of

action for treble damages for a 'person injured in his business or property by reason of a violation of section 1962.'" *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 321 (2d Cir. 2011) (quoting 18 U.S.C. § 1964(c)), *cert. denied*, 132 S. Ct. 1636 (2012).

Racketeering activity is defined by statute to consist of a number of specific criminal acts. Among these are certain felonies under state law, such as extortion, and violations of enumerated federal statutes, including certain types of fraud and extortion. *See id.* § 1961(1). A "pattern" of racketeering activity "*requires* at least two acts of racketeering activity." *Id.* § 1961(5) (emphasis added). Thus, "while two acts are necessary, they may not be sufficient" to constitute a pattern. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985). A pattern requires that two or more racketeering acts "are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *see also United States v. Pizzonia*, 577 F.3d 455, 465 (2d Cir. 2009).

The Defendants have moved to dismiss the RICO claim, arguing that Sparig has failed to allege the existence of an enterprise, any predicate acts or that such acts were the proximate cause of his injury. In his opposition to the Defendants' motion, Sparig concedes – with admirable candor – that his civil RICO claim in this case "may be inappropriate" and he "defer[s] to the court as to whether this claim should be dropped or retained." Sparig Aff. ¶ 107, ECF No. 23-1.

I conclude that Sparig has not alleged a RICO claim. He fails to allege a pattern of racketeering or any racketeering acts, let alone how he was injured in his business or property by reason of such acts. Sparig's speculation in his opposition that the failure to pay him commissions amounted to extortion under color of official right reflects a misapprehension of the Hobbs Act, 18 U.S.C. § 1951. For these and other reasons, I dismiss Sparig's RICO claim.

7

3. *The Copyright Infringement Claim*

"In order to establish a claim of copyright infringement, 'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)).

The Defendants' principal argument supporting dismissal of Sparig's copyright claim is that the copyrights in the photos at issue are owned by SRE. According to the Defendants, "[i]t is common practice in the real estate industry that [sales personnel] are called upon to photograph their inventory . . . without . . . the creation of any personal, independent copyright interest." Pasquariello Aff. ¶ 85, ECF No. 11. Because the photos were "taken incidental to [Sparig's] affiliation with [SRE]," *id.* ¶ 86, the Defendants argue that the photos are owned by SRE, not Sparig, *id.* ¶ 87.

The Defendants' argument is wrong. A copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "As a general rule, the author is the party who *actually creates the work*, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (emphasis added). An exception applies to works "made for hire," for which "the employer or other person for whom the work was prepared is considered the author . . . and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b); *see also Reid*, 490 U.S. at 737. A work made for hire is defined as either "a work prepared by an employee within the scope of his or her employment" or certain types of commissioned or specially ordered works where "the

8

parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101.

Here, the Defendants do not claim that there is a signed written instrument designating the photos taken by Sparig to be works made for hire. Accordingly, the work-for-hire doctrine applies only if Sparig was an employee and took the photos in the scope of his employment. *See Reid*, 490 U.S. at 738. In *Reid*, the Court held that "the term 'employee' should be understood in light of the general common law of agency," and thus does not include independent contractors. *Id.* at 741; *see also id.* at 751–53. Since the parties agree that Sparig worked for SRE as an independent contractor, not an employee, the photos are not works made for hire. *See id.* at 753; *Valdez v. Laffey Assocs.*, No. 07-CV-4566 (BMC) (LB), 2010 WL 1221404, at *4 (E.D.N.Y. Mar. 26, 2010).[5]

The Defendants have cited no provision under which the ownership of a copyright is affected by "common practice" in a particular industry. Since the work-for-hire doctrine does not apply and Defendants have advanced no additional theory for dismissal of the copyright infringement claim, the motion to dismiss is denied with respect to that claim as asserted against SRE, the allegedly infringing party.

C.     *State Law Claims*

Sparig has asserted a wide variety of state-law claims. Because he has pleaded a viable federal copyright claim, I have supplemental jurisdiction over his state-law claims, which arise out of a common nucleus of operative facts involving Sparig's employment relationship

---

[5] In *Valdez*, the court held that photos of properties taken by a real estate salesperson constitute "listing information," ownership of which is vested in a real estate broker after the salesperson's "association" with the broker ends under New York law. *See Valdez*, 2010 WL 1221404, at *5–6 (citing 19 N.Y. Comp. Codes R. & Regs. § 175.14). The Defendants here have not advanced this argument.

9

with SRE. *See* 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006).

Sparig's state-law claims include assault, fraudulent inducement, intentional infliction of emotional distress, abuse of process and violations of Article 12-A of the New York Real Property law, which regulates real estate brokers and salespersons. Many of these legal theories simply do not fit the facts alleged.[6]

However, a court must construe the complaint of a *pro se* litigant "liberally and interpret it 'to raise the strongest arguments that [it] suggest[s].'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)) (alterations in original). Construing the complaint in this matter, it is clear that Sparig has alleged viable claims for breach of contract and tortious interference with existing contractual relations and prospective economic advantage.[7]

The facts alleged clearly establish a breach of contract. Sparig was promised he would earn commissions of a certain amount to be paid at a certain time. He did not receive the full amount of the commissions he had earned and what he did receive was paid late, in breach of that promise. Sparig may sue to recover the unpaid commissions plus interest and, perhaps, any consequential damages that were reasonably contemplated by the parties. *See Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 886 N.E.2d 127, 130 (N.Y. 2008).

Sparig also has alleged SRE's tortious interference with his contractual relations with the landlord at 476 Jefferson Street. Sparig alleges that he had arranged to be the exclusive salesperson at 476 Jefferson Street, that SRE prevented him from obtaining the benefit of that

---

[6] I agree with the Defendants that, to the extent Sparig seeks prospective relief relating to the covenant not to compete, his claims are moot since the covenant has expired and no longer restricts him in any way.

[7] Although Sparig has not expressly pleaded a breach of contract claim, his fourteenth cause of action refers to "Nonpayment of Commissions." Am. Compl. p. 32.

agreement, which resulted in Sparig's inability to obtain commissions from that property. This establishes a viable tortious interference claim. *See Ullmannglass v. Oneida, Ltd.*, 927 N.Y.S.2d 702, 705 (App. Div. 2011).

Sparig has also alleged the sort of conduct that can support a claim for tortious interference with prospective economic advantage. *See Citi Mgmt. Grp., Ltd. v. Highbridge House Ogden, LLC*, 847 N.Y.S.2d 33, 34 (App. Div. 2007); *see also Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004). Specifically, he has alleged that, in violation of New York law, SRE has withheld documents, refused to provide documentation of Sparig's work at SRE and threatened to commence litigation for an improper purpose of harassment. Through this conduct, SRE has inhibited Sparig from obtaining income from work as a real estate salesperson or broker. These alleged facts amount to a tortious interference with his prospective economic advantage.

Because I construe Sparig's complaint as sufficiently alleging claims for breach of contract, tortious interference with contractual relations and tortious interference with prospective economic advantage, the motion to dismiss is denied with respect to those claims.

D.  *Piercing the Corporate Veil*

Although Sparig's dispute is with SRE (and Danenberg acting as SRE's principal), he has named a number of additional defendants, including Danenberg, Russell and various companies they are alleged to own. Since the owners and officers of a company are not ordinarily liable for injuries caused by the company, *see Walkovszky v. Carlton*, 223 N.E.2d 6, 7

(N.Y. 1966), the Defendants other than SRE can be liable only if the Court pierces the corporate veil of SRE.[8]

Generally, "piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. N.Y. State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160–61 (N.Y. 1993); *see also ABN AMRO Bank, N.V. v. MBIA Inc.*, 952 N.E.2d 463, 475 (N.Y. 2011); *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001).

Sparig alleges that Danenberg is the owner and chief operating officer of SRE and that he controls it and the other companies named as Defendants. Am. Compl. ¶¶ 130, 139. Sparig also alleges an abuse of the corporate form in that Danenberg threatened to commence frivolous litigation against Sparig for the purpose of causing him additional expense and delay while likewise shielding his own assets from any recovery through his use of corporate shells. *See, e.g.*, *id.* ¶¶ 85,138; *see also Godwin Realty Assocs. v. CATV Enters., Inc.*, 712 N.Y.S.2d 39, 41 (App. Div. 2000); *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 621 (S.D.N.Y. 2008), *aff'd*, 351 F. App'x 467 (2d Cir. 2009); *Feitshans v. Kahn*, No. 06-CV-2125 (SAS), 2007 WL 2438411, at *5 (S.D.N.Y. Aug. 22, 2007) ("'Proof of a stripping of the assets' of a subsidiary by the parent, or of an entity by its shareholders, which is 'motivated by a desire to render the subsidiary [or entity] judgment proof,' constitutes a fraud or wrong in satisfaction

---

[8] The Defendants argue that Sparig cannot raise a piercing-the-veil claim for the first time in his opposition to their motion. But "an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." *Morris v. N.Y. State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993). Thus, Sparig did not need to assert a separate claim to pierce the corporate veil.

of the second prong." (quoting *Carte Blanche (Sing.) PTE., Ltd. v. Diners Club Int'l, Inc.*, 758 F. Supp. 908, 917 (S.D.N.Y. 1991)) (alteration in original)). Accordingly, Sparig has sufficiently alleged that SRE's corporate veil may be pierced and Danenberg may be liable for SRE's conduct.

The same cannot be said with respect to any of the remaining Defendants.[9] Overlapping ownership is all that is alleged. Accordingly, the claims against those Defendants must be dismissed.

## CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss is denied with respect to the claims for copyright infringement, breach of contract and tortious interference against SRE and Danenberg, and otherwise granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: June 29, 2012
      Brooklyn, New York

---

[9] Danenberg and Russell have submitted affidavits stating that Russell owns 99% of SRE and Danenberg owns the remaining 1%. *See* Danenberg Aff. ¶¶ 3, 5, ECF No. 11; Russell Aff. ¶ 4, ECF No. 11. If Sparig wants to further amend his complaint based on this information, he may seek leave to do so.

13